UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HICKS,<br>Plaintiff,<br>v.<br>BEHROZ HAMKAR, et al.,<br>Defendants. | No. 2:13-cv-01687-KJM-DB<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This action proceeds on plaintiff's second amended complaint (SAC), filed March 4, 2015. (ECF No. 51.) Defendants move to dismiss this action for failure to state a claim on five separate grounds. (ECF No. 62.) For the reasons outlined below, the court recommends granting in large part defendant's motion to dismiss.

After defendants' motion to dismiss was fully briefed, plaintiff filed two motions (ECF Nos. 83; 84) requesting leave to file a third amended complaint. Defendants oppose (ECF No. 87) these motions and plaintiff filed a reply memorandum (ECF No. 88) concurring with defendants that the proposed third amended complaint is substantively the same as the SAC and so the court should rule on defendants' fully-briefed dismissal motion first. Accordingly, per the parties' agreement on this issue, the court denies plaintiff's motions (ECF Nos. 83; 84) to file a third amended complaint. As outlined in the recommendations below, plaintiff may pursue his

remaining California state law claims in a state court proceeding[1] -- if the district court adopts these recommendations.

I. Procedural Background

Plaintiff is a state prison inmate currently incarcerated at California State Prison Sacramento. (ECF No. 89.) Plaintiff initially filed this action under 42 U.S.C. § 1983 against numerous defendants on August 15, 2013. (ECF No. 1.) The initial complaint was dismissed during the screening process and plaintiff was granted leave to refile. (ECF No. 5.) Plaintiff's first amended complaint (ECF No. 10) presented cognizable claims against defendants Hamkar, Venes, Yeboah (Johnson),[2] Sayre, Zamora, and Nangalama. (ECF No. 16.) After defendants Zamora and Venes filed motions to dismiss (ECF Nos. 40; 42) the first amended complaint, plaintiff moved to amend (ECF No. 51.) The court granted the motion to amend and denied the then-pending motions to dismiss. (ECF No. 61.)

Plaintiff is now proceeding on a SAC against defendants Hamkar, Venes, Yeboah, Sayre, Zamora and Nangalama. (ECF No. 51.)[3] Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) the SAC fails to state a cognizable Eighth Amendment deliberate indifference claim; (2) the SAC fails to state a claim for the violation of Article I, § 17 of the California Constitution; (3) the SAC fails to state a claim under California Government Code § 845.6; (4) defendants, in their individual capacities, are entitled to qualified immunity from Plaintiff's Eighth Amendment claim for damages; and (5) no

---

[1] The court takes no position on whether plaintiff would be able to successfully pursue his claims in state court.

[2] Plaintiff names the senior registered nurse who interviewed him on September 19, 2012 as "S. Johnson" based upon the decision of defendant Sayre on plaintiff's inmate appeal. (ECF No. 51 at 4, 37.) Defendants refer to this same defendant as "S. Yeboah (Johnson)." (ECF No. 62.) The docket sheet for this case uses only "Johnson" as the defendant. The court, for the sake of clarity, will refer to this defendant as "Yeboah" because this defendant's own counsel uses this name in the filings.

[3] The docket sheet currently lists defendant Zamora as "terminated" from this case as of September 25, 2014. However, the court reinstated defendant Zamora on March 25, 2015. (ECF No. 29.) Furthermore, plaintiff's SAC names Zamora as a defendant (ECF No. 51 at 4) and the pending motion to dismiss the SAC is filed partially on behalf of Zamora (ECF No. 62 at 1.)

form of relief is available against defendants in their official capacities. (ECF No. 62.) Defendants additionally argue that further leave to amend should be denied as futile. (Id.) Plaintiff opposes the motion. (ECF No. 73.) Defendants filed a reply. (ECF No. 79.) The matter is now ripe for ruling.

II. Factual Background[4]

Plaintiff was diagnosed with a degenerative disc disease and bone spurring in his lower neck in 2011 while incarcerated at Pelican Bay State Prison ("PBSP"). (ECF No. 51 at 8.) After several months of treatment with over-the-counter medications and Tylenol with Codeine, plaintiff received the approval of the prison's chronic pain care committee to receive trigger point injections in March 2012, with follow up injections scheduled for early July 2012. (Id. at 8-9.)

During an appointment with defendant Venes, a physician at PBSP, on July 13, 2012, plaintiff explained that his follow-up trigger point injections were overdue. (Id. at 9.) Dr. Venes prescribed naproxen and a cervical pillow for Plaintiff, explaining that the prison no longer had a physician on staff to perform trigger point injections and that he would not administer them himself. (Id. at 9-10.) Plaintiff complained to Dr. Venes that naproxen was ineffective for his pain and that non-steroidal anti-inflammatory drugs (NSAIDs) like naproxen were known to advance liver disease, such as plaintiff's Hepatitis C. (Id.) Plaintiff requested a medical transfer to another prison or to be taken to an outside hospital facility for the trigger point injections. (Id. at 10.) Dr. Venes responded, "That[']s all you['re] getting. Get out of here." (Id.)

Defendant Yeboah, a Senior Registered Nurse II at PBSP, interviewed plaintiff on September 19, 2012, regarding an administrative health care appeal he had filed. (Id. at 11.) Plaintiff told Nurse Yeboah that the chronic pain care committee had previously approved trigger point injections, which Dr. Venes had refused to administer. Nurse Yeboah "deferred" to plaintiff's earlier examination by Dr. Venes. (Id. at 11-12.) Defendant Sayre, the Chief Medical Officer at PBSP, "completed a thorough review" of plaintiff's appeal, and denied his requests on

---

[4] The "facts" are those alleged in the SAC (ECF No. 51). The court accepts them as true for purposes of evaluating defendants' dismissal motion. Thus, the undersigned does not believe it is necessary to include the term "alleged" with each fact, as the context is clear -- the facts are merely allegations.

September 24, 2012. (Id. at 11-12, 37.) Dr. Sayre specifically found that Dr. Venes did not perform trigger point injections and did not recommend them as part of plaintiff's treatment, so therefore it was not medically necessary for plaintiff to be taken to an outside facility for the injections or for plaintiff to be transferred to another facility where those injections could be performed.

On November 8, 2012, Dr. T. Martinelli at PBSP administered the trigger point injections. (Id. at 12, 38-39.) However, plaintiff stated that the injections were "ineffective" and continued to complain of severe chronic neck pain. (Id. at 12.) Plaintiff's appeal was partially granted on November 9, 2012 by Chief Executive Officer Maureen McLean at PBSP, citing to the injections that were administered the day before. (Id. at 12, 38.) Plaintiff continued his appeal to the third level of review, claiming that the injections were "ineffective." (Id. at 12.) While his appeal was pending, plaintiff received trigger point injections again on January 17, 2013. (Id. at 39.)

Plaintiff was transferred to California State Prison Sacramento in March 2013. (Id. at 13.) Dr. Dhillon at California State Prison Sacramento saw Plaintiff on April 12, 2013 and denied his request for trigger point injections. (Id.) However, Dr. Dhillon requested physical therapy for plaintiff and continued his naproxen prescription. (Id.) Plaintiff was evaluated by a physical therapist on April 24, 2013, and provided "four weekly sessions of ultrasound, electronic stimulation, and cervical/spine . . . manual traction." (Id.)

During an evaluation by his then-primary care physician, defendant Hamkar, on July 2, 2013, plaintiff reported sharp neck and shoulder pain, loss of mobility, disturbed sleep, and numbing and tingling in his left hand and finger tips. (Id. at 14.) Plaintiff requested a prescription for a stronger pain medication than naproxen and requested physical therapy twice a week. (Id.) Dr. Hamkar told plaintiff that physical therapy was not feasible because he was housed in the psychiatric services unit and that he would "just have to live with it." (Id.) Dr. Hamkar also denied plaintiff's requests for a referral to the chronic pain care committee, for a medical transfer, and for trigger point injections. (Id. at 14-15.) Dr. Hamkar did, however, increase the dosage of the naproxen prescription to an amount twice the manufacturer's daily recommended amount. (Id. at 15.)

Defendant Zamora, Chief of Third Level Appeals-Health Care for California Correctional Health Care Services, denied plaintiff's appeal on July 26, 2013. (Id. at 15-16, 39-40.) Zamora's decision noted that plaintiff received trigger point injections on November 8, 2012 and January 17, 2013, and that Plaintiff had most recently been evaluated by this primary care provider on July 2, 2013, when his prescribed dosage of naproxen was increased. (Id.) Zamora concluded that no intervention was necessary because plaintiff's "medical condition ha[d] been evaluated and [he was] receiving treatment deemed medically necessary." (Id. at 40.)

Plaintiff saw defendant Nangalama, his new primary care physician at California State Prison Sacramento, on five occasions. During his visit on December 26, 2013, plaintiff informed Dr. Nangalama of his continuing pain, loss of range of motion, numbness, and disrupted sleep. (Id. at 16-17.) Dr. Nangalama denied plaintiff's request for an alternative, stronger pain medication, but ordered a cervical x-ray, which was taken on January 8, 2014. (Id. at 17.) During a February 7, 2014 appointment, Dr. Nangalama ordered physical therapy for plaintiff, but, again, denied his request for stronger pain medication. (Id.) Plaintiff was seen by a physical therapist on February 25 and March 4, 2014. (Id. at 18.) The physical therapist recommended that plaintiff be provided with a commercial cervical collar and discontinued any further physical therapy. (Id.)[5]

On March 17, 2014, Dr. Nangalama changed plaintiff's pain medication from naproxen to Celebrex and ordered a cervical MRI to be performed. (Id. at 18-19.) Dr. Nangalama refused Plaintiff's request for a transfer to another institution where physical therapy could be provided on a more regular basis. (Id. at 19.) Plaintiff saw Dr. Nangalama again four days later. During this visit, Dr. Nangalama prescribed 600 mg of Motrin in addition to the previously-prescribed Celebrex, but denied plaintiff's request for a "cervical traction kit," physical therapy, Neurontin, trigger point injections, or a transfer to another prison. (Id. at 20.) Dr. Nangalama noted that

////

---

[5] The physical therapist also recommended that plaintiff continue manual traction on his own, but noted that this would only be possible "out of prison" because this activity would involve putting a rope or sheet around plaintiff's neck attached to an air vent if in a prison cell. (ECF No. 51 at 18-19.)

California State Prison Sacramento did not have the "time, facility, or physical therapist on staff to administer regular physical therapy sessions." (Id.)

III. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court must accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts that may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and similar papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

IV. Legal Analysis

A. Eighth Amendment Claims

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX *1082 Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)). A prison official is deliberately indifferent to that need if he "knows of and disregards an excessive risk to inmate health." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Moreover, insofar as a plaintiff wishes to present a claim that he has received constitutionally inadequate medical care, he must allege in specific terms how any named

defendants were "deliberately indifferent" to his serious medical needs in either denying or providing inadequate medical care to him. See Estelle, 429 U.S. at 106. Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Differences in medical opinion do not rise to the level of an Eighth Amendment violation. A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Likewise, a mere disagreement between plaintiff and defendants as to how defendants provided him with medical care fails to state a cognizable section 1983 claim. Id.; see also Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

1. Claim against Defendant Venes

Plaintiff alleges that Dr. Venes was deliberately indifferent to his medical needs by denying him access to trigger point injections after the chronic pain care committee recommended that course of treatment. Specifically, plaintiff alleges that Dr. Venes reviewed his medical file (including the chronic pain care committee's recommendation of injections) and refused to administer the injections himself, additionally explaining that the prison no longer had a qualified physician on staff to administer the injections. (ECF No. 51 at 10.)

The government's representation that this is merely an instance where a plaintiff-patient disagrees with the treatment prescribed by a physician is not reflected in the actual allegations. The allegations specifically state that the chronic pain care committee scheduled follow-up injections for early July when Dr. Venes saw plaintiff. (Id. at 8-9.) Dr. Venes was aware of the

recommendation, but refused to administer the injections or find an alternative means of providing the treatment. (Id. at 9-10.) Dr. Venes reasoned that qualified personnel were not present at the prison; he did not base his refusal upon his medical opinion. (Id.) Thus, the allegations establish an instance where the defendant physician disregarded the recommendation of *another treating physician* for non-medical reasons.

To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctor[] chose was medically unacceptable under the circumstances" and "that [the doctor] chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson, 90 F.3d at 332. Furthermore, a doctor's awareness of the need for treatment followed by his unnecessary delay in implementing the prescribed treatment is sufficient to plead deliberate indifference. Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012); see also Estelle, 429 U.S. at 104-05 (delays in providing medical care may manifest deliberate indifference). To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was *harmful*. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); see also Jett, 439 F.3d at 1096 ("prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs").

Taking plaintiff's claims as true, as this court must on a motion to dismiss, Dr. Venes was aware of the need for this treatment, but unnecessarily delayed the implementation. See Wilhelm, 680 F.3d at 1123. Significantly, plaintiff was provided with trigger point injections on two latter occasions -- on November 8, 2012 and January 17, 2013 -- after his visit with Dr. Venes. (See ECF No. 51 at 12, 39.) This reinforces plaintiff's allegations that the treatment was necessary and that Dr. Venes' refusal to treat in the manner prescribed by the chronic pain care committee in July of 2012 was deliberately indifferent. So, plaintiff's complaint consists of a specific allegation that a doctor who was aware of this purportedly-necessary treatment delayed its implementation.

However, plaintiff's complaint does not allege that this delay was *harmful*, a necessary component of establishing deliberate indifference for delay of treatment. See Berry, 39 F.3d at

1057. In fact, plaintiff specifically alleges that the trigger point injections were "not effective" in addressing his neck pain. (ECF No. 51 at 12 (also referring to the injections as "ineffective")). For this reason, plaintiff does not establish a plausible claim against Dr. Venes for deliberate indifference. Additionally, because plaintiff specifically terms this delayed treatment as "ineffective," he *cannot* establish that the delay was harmful in an amended pleading, and, therefore, the claim should be dismissed *with prejudice*.

2. Claims against Defendants Hamkar and Nangalama

As with Dr. Venes, plaintiff cannot establish plausible claims for relief against the other medical providers, Dr. Hamkar and Dr. Nangalama.

Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical needs against Dr. Hamkar. Plaintiff's allegations merely suggest a difference of opinion regarding his medication and treatment. A difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. See Sanchez, 891 F.2d at 242.

Dr. Hamkar responded to plaintiff's complaints of pain by increasing the prescribed dosage of naproxen. (ECF No. 51 at 15.) In the note for that appointment, Dr. Hamkar justified his decision not to prescribe the medication requested by plaintiff, stating that "[u]pon review of the chart, . . . [he] notice[d] that in the past [plaintiff] has had a history of overdosing on Neurontin." (Id. at 57.) Dr. Hamkar denied plaintiff's request for additional physical therapy because it was not feasible where plaintiff was housed, the psychiatric services unit. (Id. at 14.) Dr. Hamkar also denied plaintiff's request for additional ultrasound treatment and for a referral to the chronic pain care committee. (Id. at 15.) These allegations -- that Dr. Hamkar disagreed with and denied some of plaintiff's medical requests -- reflect Dr. Hamkar making medical diagnoses and prescribing appropriate treatment based on practical and medical circumstances. Accordingly, the fact that plaintiff disagrees with Dr. Hamkar's diagnosis and treatment is insufficient to establish deliberate indifference. See Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; Jackson, 90 F.3d at 332.

////

Plaintiff saw Dr. Nangalama on four occasions. During these visits, Dr. Nangalama ordered a cervical x-ray to be taken, ordered physical therapy, and prescribed Celebrex and Motrin for pain relief. (Id. at 36-41.) As with Dr. Hamkar, plaintiff disagreed with the treatments prescribed. (Id. at 16-21.) Plaintiff requested stronger medications, a commercial cervical collar (as recommended by the physical therapist), a transfer to another facility where physical therapy could occur more regularly and a cervical traction kit; Dr. Nangalama rejected all of these requests. (Id.) Plaintiff's disagreement with Dr. Nangalama's diagnoses and treatments is legally insufficient to establish deliberate indifference. See Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; Jackson, 90 F.3d at 332. Furthermore, Dr. Nangalama's rejection of the physical therapist's recommendations represents a standard scenario where one medical professional disagrees with the opinion of another. A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. See Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242; Jackson, 90 F.3d at 332.

Plaintiff's allegations amount to the second-guessing of his primary care physicians without any basis to support the allegations that the treatment was inadequate. In his response to the motion to dismiss, plaintiff alludes to cases where extreme instances of bad judgment by medical personnel that "shock the conscience" can constitute Eighth Amendment violations. (ECF No. 73 at 14.)[6] The allegations in the complaint do not come close to reaching such an extreme degree.

For instance, in Greeno v. Daley, the plaintiff inmate was denied access to tests that would diagnose the cause of his symptoms for a two year period. 414 F.3d at 655. One of Greeno's doctors even went so far as to issue an "emphatic ban" on all treatment for Greeno during the period in question. Id. After two years, Greeno's doctors final ordered a test that diagnosed an ulcer, which was quickly and successfully treated. Id. Plaintiff's case does not present a

---

[6] Specifically, plaintiff cites to Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 2011), Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005), and Lavender v. Lampert, 242 F. Supp. 2d 821, 848 (D. Or. 2002).

synonymous situation; plaintiff has had liberal excess to medical professionals who repeatedly tested plaintiff's health and offered a broad range of treatment options based upon the objective medical testing. Unlike in Greeno, plaintiff's doctors did not face a readily diagnosable and treatable ailment (such as an ulcer) that they addressed by halting all testing and treatment to the inmate's detriment. While plaintiff disagrees with his doctors' opinions, his allegations do not reach the extreme degree found in Greeno, where the court determined a factual issue exists when physicians allegedly block the inmate from getting objective medical evidence to diagnose his condition. [7]

Even so, the only instance where plaintiff may establish a claim for an undue delay in treatment actually resulted in no harm, as his complaint, itself, deemed the delayed treatment ineffective. Additionally, the record is clear that plaintiff is receiving regular medical treatment for his chronic neck pain. The extensive factual background documented by the court above shows plaintiff has seen numerous physicians and been prescribed a variety of treatment options over the years, including trigger point injections, physical therapy, a cervical pillow and pain medication. The allegations only go so far as to present the fact that *plaintiff* disagrees with these various treatments; nothing is alleged to indicate that these treatments are, in and of themselves, medically deficient to a degree that "shocks the conscience."

For these reasons, plaintiff's Eighth Amendment claims against Drs. Hamkar and Nangalama should be dismissed. Additionally, dismissal should be *with prejudice* because plaintiff, now on his third version of the complaint, is unable to present any plausible claims that his treatment by these two physicians is constitutionally inadequate.

3. Claims against Defendants Yeboah, Sayre, and Zamora

Plaintiff's claims against defendants Yeboah, Sayre, and Zamora are centered upon the appeals process that he received in prison. Plaintiff alleges that these defendants were

////

[7] Furthermore, each case plaintiff cited is from another district court or outside the Ninth Circuit and therefore does not necessarily represent binding authority. Camreta v. Greene, 563 U.S. 692, 709 n. 7 (2011).

deliberately indifferent to his medical needs through their roles in processing and adjudicating his health care appeals.

Nurse Yeboah interviewed plaintiff for the administrative appeal he filed concerning Dr. Venes' treatment. (ECF No. 51 at 11.) At this interview, plaintiff expressed to Nurse Yeboah that Dr. Venes had denied his request for the injections that were "referred/approved" by the chronic pain care committee. (Id.) Plaintiff then requested immediate injections at an outside facility or transfer to a prison where injections could be administered. (Id.) Based upon this interview, Nurse Yeboah produced a report for Dr. Sayre, in which she "deferred" to the judgment of Dr. Venes and his decision to not administer injections. (Id.) It appears as though plaintiff faults Nurse Yeboah for contributing to Dr. Sayre's decision to reject his appeal. Plaintiff alleges that Dr. Sayre wrongfully rejected his appeal. Similarly, plaintiff claims that defendant Zamora, a non-medical professional who addressed plaintiff's second-level appeal, improperly approved of the ongoing treatment of plaintiff's pain conditions by prison medical personnel.

To the extent plaintiff intends to base a claim on these defendants' failure to follow state law or prison regulations governing inmate appeals as set forth in Cal. Code Regs. tit. 15, § 3084, et seq., such violations cannot be remedied under section 1983 unless they also violate a federal constitutional or statutory right. See Davis v. Scherer, 468 U.S. 183, 192 (1984). Section 1983 provides no redress for prison officials' mere violation of state prison regulations. See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370-71 (9th Cir. 1996) (federal and state law claims should not be conflated; to the extent the violation of a state law amounts to a deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress) (quotation marks omitted).

Further, to the extent that plaintiff seeks to challenge the inmate grievance process itself, he is advised that inmates lack a separate constitutional entitlement to a specific grievance

procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure) (citing Mann v. Adams, 855 F.2d 649, 640 (9th Cir. 1988)). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 2d 8, 10 (N.D. Ill. 1982); accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of a grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. 2d at 10; see also Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Plaintiff cannot therefore state a claim for relief for any deficiency in the grievance process. See Dixon v. Lewis, No. 1:16-cv-00989, 2016 WL 5235041, at *4 (E.D. Cal. Sept. 21, 2016).

As far as plaintiff claiming that each of these defendants had knowledge that plaintiff disagreed with the diagnoses and treatments of his various physicians, this too falls short in stating a plausible claim for relief. As the court found concerning the claims against physicians, the most liberal interpretation of those allegations finds that plaintiff disagreed with his physicians and that one doctor purportedly delayed a necessary treatment that resulted in no harm. These circumstances present no plausible constitutional violations on behalf of the doctors. Therefore, by extension, there are no constitutional violations that may be imputed to defendants Yeboah, Sayre, and Zamora through their alleged knowledge of these disagreements and harmless delays.

Accordingly, the court finds that plaintiff's claims against defendants Yeboah, Sayre, and Zamora should also be dismissed *with prejudice*.

B. Failure to State a Claim for Violation of the California Constitution

Plaintiff's claim under Article I, § 17 of the California Constitution, which prohibits cruel or unusual punishment, should be dismissed because no private cause of action for damages exists under this section. Giraldo v. Cal. Dep't of Corr. & Rehab., 168 Cal. App. 4th 231, 256 (2008) ("there is no basis to recognize a claim for damages under article I, section 17 of the California Constitution"). Plaintiff, in his response to the motion to dismiss, concedes that no cause of

action exists under the California Constitution and therefore agrees to withdraw this claim. (ECF No. 73 at 16.) Accordingly, the court recommends dismissal of this claim *with prejudice*.

C. Plaintiff's California Government Code § 845.6 Claims

Plaintiff also alleges that defendants' purportedly deficient medical care and the failure of staff at the appellate level to rectify the treatment constitutes a violation of California Government Code § 845.6, which provides that "a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." To file a claim under section 845.6, a plaintiff must first exhaust the administrative remedies established in the Government Claims Act.

Section 945.4 of the Government Claims Act provides that "[n]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division *until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board*, in accordance with Chapters 1 and 2 of Part 3 of this division." Cal. Gov't Code § 945.4 (emphasis added). Section 950.6 provides that "[w]hen a written claim for money or damages for injury has been presented to the employing public entity: (a) a cause of action for such injury may not be maintained against the public employee or former public employee whose act or omission caused such injury *until the claim has been rejected, or has been deemed to have been rejected, in whole or in part by the public entity*." Cal. Gov't Code § 950.6 (emphasis supplied). See also Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) ("A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the [Government] Claims Act before commencing a civil action.") (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995)).

The claims-presentation requirement "constitutes an element of any cause of action arising under the Government Claims Act." Mohsin v. Cal. Dep't of Water Res., 52 F. Supp. 3d 1006,

1017-18 (E.D. Cal. 2014). Failure to meet this requirement subjects a claim to dismissal for failure to state a cause of action. Yearby v. California Dep't of Corr., No. 2:07–CV–02800, 2010 WL 2880180, at *4-5 (E.D. Cal. July 21, 2010). "Plaintiffs must 'allege facts demonstrating or excusing compliance with the claim presentation requirements.'" Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) (quoting State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004) (holding that "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action")).

It appears that plaintiff's SAC makes no reference to this requirement and presents no facts to indicate that the requirement was met. (ECF No. 51.) However, in response to the dismissal motion, plaintiff asserts that he did, in fact, comply with the Government Claims Act and attaches a copy of the claim filed with the Victim Compensation & Government Claims Board (VCGCB) and the VCGCB's subsequent denial of his claim. (ECF No. 73 at 16-17, 21-31.)

Regardless, the Government Claims Act and section 845.6 are state laws and do not provide a basis for federal jurisdiction, so the court does not reach any conclusions on these claims. See Banks v. U.C. Regents, No. 2: 14-cv-0460 TLN KJN P, 2016 WL 3034046, *15 (E.D. Cal. Feb. 12, 2016) ("A federal district court may decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction.") (citing 28 U.S.C. § 1367). Because plaintiff failed to state a plausible claim for relief under federal law, this court should decline to exercise supplemental jurisdiction over plaintiff's putative state law claims.[8] The decision to decline to exercise supplemental jurisdiction under section 1367(c) should be informed by the values of economy, convenience, fairness, and comity. Acro v. Varian Assoc., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of

////

[8] The court takes no position on whether plaintiff would be able to successfully pursue his claims in state court.

factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

Considering all of the factors, the undersigned recommends that the court decline to exercise jurisdiction over plaintiff's state law claims. Because no federal claims remain, consideration of plaintiff's state law claims is not warranted.

D. No Leave To Amend

If the court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1005-06.

The undersigned finds that, as set forth above, plaintiff's Eighth Amendment allegations against all defendants cannot establish a plausible claim as a matter of law and amendment would be futile. Because plaintiff cannot establish plausible federal claims, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss the complaint in its entirety.

V. Conclusion

As outlined above, defendants' motion to dismiss should be granted in large part. Accordingly, IT IS HEREBY ORDERED that plaintiff's motions to amend (ECF Nos. 83; 84) are denied and IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be granted in part;

2. Plaintiff's Eighth Amendment claims against all defendants be dismissed with prejudice;

3. Plaintiff's California Constitutional claims against all defendants be dismissed with prejudice;

4. The district court decline to exercise supplemental jurisdiction over plaintiff's California Government Code § 845.6 claims against all defendants; and

5. The complaint be dismissed in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 5, 2016

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:10
DLB1 / Prisoner - Civil Rights / hick1687.mtd